# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

PATRICK WAYNE MANNING, II,          )
                                             )
                **Petitioner,**          )
                                             )
vs.          )          **Case No. 13-CV-722-TCK-FHM**
                                             )
ROBERT C. PATTON, Director,[1]          )
                                             )
                **Respondent.**          )

## OPINION AND ORDER

Before the Court is the petition for writ of habeas corpus (Dkt. # 1) filed by Petitioner, a state inmate appearing pro se. Respondent filed a response (Dkt. # 18), and provided the state court records necessary for adjudication of Petitioner's claims (Dkt. ## 18, 19, 20). Petitioner filed a reply (Dkt. # 24). Petitioner also filed motions "to expand on appeal" with an attached "supplemental habeas brief" (Dkt. # 29), "to expedite habeas petition" (Dkt. # 30), and "for appointment of counsel/evidentiary hearing" (Dkt. # 32). For the reasons discussed below, the petition for writ of habeas corpus is denied. Petitioner's motions "to expand on appeal" and "for appointment of counsel/evidentiary hearing" are denied and the motion "to expedite habeas petition" is declared moot.

## BACKGROUND

From November 28, 2008, through February 25, 2009, four (4) armed robberies of IBC Banks, all located in Tulsa, Oklahoma, took place. The first bank robbed was located at 111 W. 5th

---

[1]Petitioner is in custody at a private prison in Oklahoma. Under Rule 2(a), Rules Governing Section 2254 Cases, the proper party respondent is Robert C. Patton, the Director of the Oklahoma Department of Corrections. Therefore, Robert C. Patton, Director, shall be substituted for Edward Evan, Interim Director, as the proper party respondent in this action. The Clerk shall note the substitution on the record.

Street.  The second bank robbed was located at 8202 E. 71st Street.  Bank employees involved in the first two (2) robberies described the robber as a black male wearing a wig, a beard, and a long black coat. In both robberies, the robber was armed with a gun and a taser.  He directed the employees to the vault and ordered them to put money in a white kitchen trash bag.  The losses were $37,000 from the first armed robbery and $92,000 from the second armed robbery.

The IBC Bank located at 41st Street and Garnett Avenue was the site of both the third and fourth robberies.  In both of those robberies, employees described the robber as a black man armed with a gun.  He wore black jeans, a black leather trench coat, a gray beanie, a T-shirt covering his face, and black sunglasses.  The robber jumped over the counter and told the employees we wanted to go to the vault.  During the third robbery, the employees were unable to open the vault and put money from their cash drawers into a white trash bag produced by the robber.  The loss from the third armed robbery was $14,000.  During the fourth robbery, the robber's hood and mask fell off when he jumped the counter.  After an employee opened the vault, other employees put money into a white trash bag provided by the robber. During the fourth robbery, one of the bank employees recognized the robber as the same man who had committed the third robbery.  The loss from the fourth armed robbery was $102,000.

After the fourth armed robbery, Tulsa Police Department detectives released surveillance photos of the robber to the media.  Detectives received a Crime Stoppers tip identifying Patrick Manning as the man in the photos.  Based on that information, the detectives prepared a 6-person photo lineup and presented it, separately, to the employees of the IBC Bank at 41st Street and Garnett Avenue.  Three employees selected a photograph of Patrick Manning as the man who robbed the bank.

Based on those identifications, Tulsa Police Department Detective John Brown obtained a warrant for Petitioner's arrest with regard to the robberies of the bank located at 41st Street and Garnett Avenue. On March 9, 2009, police found Petitioner at a motel located just east of 32nd Street and Memorial Avenue in Tulsa, Oklahoma. When he was confronted by police and told that he was being arrested, Petitioner ran. In order to subdue Petitioner, the police shot him multiple times with a pepper-ball gun. It took four (4) police officers to restrain Petitioner. Once he was handcuffed and in custody, Petitioner was transported to the Detective Division by Tulsa Police Officers Josh Martin and Jason Muse. While he was being transported, Petitioner made unsolicited statements that he had done "some licks on some banks."

As a result of those events, Petitioner was charged, by Second Amended Information filed in Tulsa County District Court, Case No. CF-2009-1023, with four (4) counts of Robbery With a Firearm (Counts 1, 2, 4, and 5), and Resisting an Officer (Count 3). Petitioner received a jury trial. At the conclusion of trial, the jury found Petitioner guilty as charged. On December 4, 2009, the trial judge sentenced Petitioner, in accordance with the jury's recommendations, to forty (40) years imprisonment and a fine of $10,000 on each of Counts 1, 2, 4, and 5, to be served consecutively, and to twelve (12) months in the Tulsa County Jail (TCJ) and a fine of $500 on Count 3, to be served concurrently with Count 1. Assistant Public Defender Julie Ann Ball represented Petitioner at trial.

Represented by Assistant Public Defender Richard Couch, Petitioner perfected a direct appeal to the Oklahoma Court of Criminal Appeals (OCCA). Petitioner raised two (2) propositions of error, as follows:

> Proposition One: The appellant was deprived of effective assistance of counsel when trial counsel failed to object to unreliable identification testimony from IBC bank employees.

3

Proposition Two: The trial court committed plain error when it failed to give, sua sponte, OUJI-CR (2000) 9-22 (Evidence – Impeachment of a Witness by Former Conviction) as to state's witness Tamara Holmes.

(Dkt. # 18-1). The OCCA also allowed Petitioner to file a pro se supplemental brief and summarized his eight (8) additional claims, as follows:

1. Ineffective assistance of counsel based on counsel's collusion with the State;

2. Ineffective assistance by failing to request a mistrial after tainted eyewitness identification testimony;

3. Abuse of discretion in the district court's refusal to grant his request to proceed *pro se*;

4. Abuse of discretion in the district court's admission of statements obtained by coercion;

5. Prosecutorial misconduct occurred when the State knowingly used misleading eyewitness testimony;

6. Prosecutorial misconduct occurred when the State mentioned a prior charge of homicide against Appellant at formal sentencing;

7. Abuse of discretion in the district court's admission of recorded jail phone calls in violation of the constitutional right to confrontation;

8. Violation of due process in the district court's admission of unreliable in-court identification testimony.

See Dkt. # 18-3 at 2. In an unpublished Summary Opinion, filed April 6, 2011, in Case No. F-2009-1182, the OCCA denied relief on all of Petitioner's claims, including his claims raised in his pro se supplemental brief, and affirmed the Judgment and Sentence of the district court. Id.

On January 25, 2012, Petitioner filed an application for post-conviction relief. After the trial judge denied the requested relief, Petitioner appealed. (Dkt. # 18-4). In resolving Petitioner's post-conviction appeal, the OCCA found that Petitioner raised five (5) claims: (1) ineffective assistance of appellate counsel, (2) the State failed to prove chain of custody for tape recorded evidence, (3)

ineffective assistance of trial counsel, (4) new evidence of police corruption, and (5) new evidence

of false information in the arrest affidavit. By Order filed May 29, 2013, in Case No. PC-2012-308

(Dkt. # 18-5), the OCCA affirmed the district court's denial of post-conviction relief.

Petitioner commenced this federal action by filing a pro se petition for writ of habeas corpus.

(Dkt. # 1). Petitioner raises six (6) grounds of error, as follows:

Ground 1: Violation of the Fifth and Fourteenth Amendment by admission of alleged confession with evidence of physical abuse by police.

Ground 2: Ineffective assistance of appellate counsel in violation of the Sixth Amendment.

Ground 3: The district court abused its discretion by denying Mr. Manning's right to waive adversarial counsel and proceed pro se in violation of the Sixth and Fourteenth Amendment.

Ground 4: Abuse of discretion by violation of the Confrontation Clause of the Sixth Amendment by admitting jail telephone recordings without cross-examination of officers who recovered and/or possessed the recordings.

Ground 5: Violation of the due process clause of the Fourteenth Amendment by admission of unnecessarily suggestive eyewitness identifications that were not severed from pretrial confrontations.

Ground 6: State erred in failing to hold a hearing regarding Mr. Manning's claims that he was denied effective assistance of counsel at trial and appeal in violation of the Sixth Amendment.

(Dkt. # 1). Respondent argues that the OCCA's adjudication of grounds 1, 2, 3, 4, and 5 was not

contrary to, or an unreasonable application of, clearly established federal law as determined by the

Supreme Court, and that ground 6 raises a state law issue not cognizable on federal habeas review.

(Dkt. # 18).

*ANALYSIS*

**A.      Exhaustion**

As an initial matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b).  Rose v. Lundy, 455 U.S. 509, 510 (1982).  Petitioner presented the claims raised in the petition to the OCCA on direct and post-conviction appeal. Therefore, he has exhausted his state court remedies as to those claims.

**B.      Motion for appointment of counsel/evidentiary hearing**

Petitioner requests appointment of counsel.  The Court denies Petitioner's request. There is no constitutional right to counsel beyond the direct appeal of a conviction. See Swazo v. Wyoming Dep't of Corrections, 23 F.3d 332 (10th Cir. 1994).

Petitioner's motion for an evidentiary hearing is denied.  Petitioner has not met his burden of proving entitlement to an evidentiary hearing.  Williams v. Taylor, 529 U.S. 420 (2000); Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998).

**C.      Motion to file "supplemental habeas brief"**

In the "supplemental habeas brief" attached to Petitioner's motion "to expand on appeal" (Dkt. # 29), Petitioner raises a claim of ineffective assistance of trial counsel based on a "conflict of interest."  (Dkt. # 29-1).  Petitioner further claims that trial counsel failed to: communicate with him, review written communications from Petitioner, investigate witnesses including alibi witnesses, investigate evidence demonstrating proof of income, investigate Petitioner's medical history, investigate fingerprint evidence, present prosecutorial misconduct and police corruption defense, investigate jail telephone recording, and investigate viable defense of police corruption.  See id. Because Petitioner does not raise an ineffective assistance of trial counsel claim in his petition for

writ of habeas corpus,[2] the Court shall adjudicate the "motion to expand on appeal" as a motion to amend the petition for writ of habeas corpus.

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. The enactment of AEDPA in 1996 "dramatically altered the landscape for federal habeas corpus petitions" by preserving the "total exhaustion" requirement of Lundy, 455 U.S. at 510, but at the same time imposing a 1-year statute of limitations on the filing of federal petitions. Rhines v. Weber, 544 U.S. 269, 274 (2005). While he timely filed his habeas petition, Petitioner filed his motion "to expand on appeal" on November 12, 2014, or more than one (1) year after he filed his original petition and more than one (1) year past the 1-year statute of limitations deadline.[3]

_____

[2]In ground 2 of his habeas petition, Petitioner raises ineffective assistance of appellate counsel for failing to argue that trial counsel operated under a conflict of interest with respect to challenging the validity of witness identification procedures. See Dkt. # 1 at 20. The allegations of ineffective assistance of trial counsel contained in the proposed "supplemental habeas brief" greatly exceed those allegations of ineffective assistance of trial counsel underlying the claim of ineffective assistance of appellate counsel raised in the original petition. Compare Dkt. # 29-1 with Dkt. # 1 at 20-35.

[3]Petitioner's conviction became final on July 5, 2011, 90 days after the OCCA affirmed his convictions and sentences on direct appeal and he failed to file a petition for writ of certiorari at the United States Supreme Court. Therefore, Petitioner's 1-year limitations period began to run on July 6, 2011, and, in the absence of statutory or equitable tolling, his deadline for filing a timely petition for writ of habeas corpus was July 6, 2012. See United States v. Hurst, 322 F.3d 1256 (10th Cir. 2003) (applying Fed. R. Civ. P. 6(a) to calculate AEDPA deadline); Harris v. Dinwiddie, 642 F.3d 902, 906 n.6 (10th Cir. 2011). Under 28 U.S.C. § 2244(d)(2), the limitations period was tolled during the pendency of Petitioner's post-conviction proceedings. When Petitioner filed his application for post-conviction relief in Tulsa County District Court, Case No. CF-2004-3354, on January 25, 2012, 163 days remained in his 1-year period. When the OCCA affirmed the denial of post-conviction relief on May 29, 2013, Petitioner had 163 days to file timely habeas claims, or until November 8, 2013. Thus, Petitioner's original petition, filed September 12, 2013, is timely. However, any new claim raised in the "motion to expand appeal," filed November 12, 2014, is untimely. The Court also notes that Petitioner's various motions for transcripts and his petition for writ of mandamus are not collateral proceedings serving to toll the limitations period under §

Therefore, unless Petitioner is entitled to equitable tolling of the limitations period or the grounds raised in the proposed amended petition relate back to the original petition, the motion to amend is untimely.

Petitioner has not demonstrated he is entitled to equitable tolling. A petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 130 S. Ct. 2549, 2562 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). A petitioner's burden in making this demonstration is a heavy one: a court will apply equitable tolling only if a petitioner is able to "'show specific facts to support his claim of extraordinary circumstances and due diligence.'" Yang v. Archuleta, 525 F.3d 925, 928 (10th Cir. 2008) (quoting Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008)). Significantly, equitable tolling applies only in "rare and exceptional circumstances." Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000) (citing Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998)).

Petitioner diligently pursued his case in state courts and timely filed his federal habeas petition. Petitioner has also made inquiries into the status of his habeas petition during its pendency. See Dkt. ## 27, 28. However, Petitioner fails to show "some extraordinary circumstance stood in his way" preventing him from filing a timely motion to amend. Petitioner alleges that his inability to be given access to the trial transcripts created an impediment to his ability to raise the claim of ineffective assistance of counsel. (Dkt. # 29 at 4-5). However, a review of the record reveals that Petitioner presented claims of ineffective assistance of trial counsel on direct appeal and in his post-conviction proceedings and was well aware of the factual bases of his claims at that time.

2244(d)(2). May v. Workman, 339 F.3d 1236, 1237 (10th Cir. 2003).

Furthermore, an inmate's lack of state court records is not an "extraordinary circumstance" justifying equitable tolling. See United States v. Banuelos–Munoz, 182 F.3d 933, 1999 WL 314616 (10th Cir. May 19, 1999) (unpublished)[4] (disallowing equitable tolling of the limitations period based on obstacles faced by the petitioner in obtaining a transcript in part because the facts supporting his claims had not depended on the transcript); see also United States v. Pedraza, 166 F.3d 349, 1998 WL 802283 (10th Cir. Nov.18, 1998) (unpublished) (holding that a federal prisoner was not entitled to equitable tolling of the limitations period in 28 U.S.C. § 2255 based on the unavailability of a transcript). Thus, without more, Petitioner fails to show "rare and exceptional circumstances" that justify equitable tolling.

Because Petitioner's motion to amend is untimely under the AEDPA, the motion must be denied unless the claims raised in the proposed amended petition relate back to the date of the original petition, see Fed. R. Civ. P. 15(c) (providing conditions determining whether an amended pleading relates back to the date of the original pleading). See United States v. Espinoza-Saenz, 235 F.3d 501 (10th Cir. 2000); see also Woodward v. Williams, 263 F.3d 1135, 1142 (10th Cir. 2001) (citing Espinoza-Saenz, 235 F.3d at 505, for proposition that "an untimely amendment to a § 2255 motion which, by way of additional facts, clarifies or amplifies a claim or theory in the original motion may, in the District Court's discretion, relate back to the date of the original motion *if and only if* the original motion was timely filed and *the proposed amendment does not seek to add a new claim or to insert a new theory into the case*"); see also United States v. Duffus, 174 F.3d 333 (3d Cir. 1999). While an amendment can relate back to the original filing date if "the amendment asserts

---

[4]This and other unpublished opinions herein are not precedential but are cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading," Fed. R. Civ. P. 15(c)(1)(B), with respect to amendment of habeas petitions, the Supreme Court has determined that "[a]n amended habeas petition . . . does not relate back (and, thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Mayle v. Felix, 545 U.S. 644, 650 (2005). That the grounds for relief are related to the petitioner's trial and conviction is, by itself, insufficient. Id. Rather, "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." Id. at 659.

Upon review of the original petition and the proposed "supplemental brief," the Court finds that Petitioner's claims of ineffective assistance of trial counsel do not relate back to the original petition. The Court finds that Petitioner's claims of ineffective assistance of trial counsel are new claims and serve to insert new theories into the case. Petitioner failed to raise his claims of ineffective assistance of trial counsel in his original petition. For that reason, the claim does not relate back to the original petition. Therefore, the ineffective assistance of trial counsel claims raised in the proposed "supplemental habeas brief" do not relate back and are time-barred. Petitioner's "motion to expand on appeal," adjudicated as a motion to amend, shall be denied.

**D.      Claims adjudicated by the OCCA**

As stated above, the AEDPA provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86, 101-03 (2011); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (citing Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)). The petitioner "'must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Richter, 562 U.S. at 103); see also Metrish v. Lancaster, 133 S. Ct. 1781, 1787 (2013).

In this case, the OCCA adjudicated Petitioner's claims on the merits on direct and post-conviction appeal. Therefore, the Court will review the claims under the standards of § 2254(d).

## 1.    Fifth Amendment violation (ground 1)

In ground 1, Petitioner argues his rights under the Fifth and Fourteenth Amendments were violated "by admission of alleged confession with evidence of physical abuse by police." (Dkt. # 1 at 15). He claims that he was beaten so severely by police during the time of the confession that he had to be hospitalized. Id. at 16. The record reflects that the trial court held a Jackson v. Denno[5] hearing to determine the voluntariness of Petitioner's statements to police given while he was being

---

[5]Jackson v. Denno, 378 U.S. 368, 376 (1964) ("A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined.").

transported to the detective division.  See Dkt. # 19-3, Tr. Vol. I at 33-64, 216-228.  At the

conclusion of the hearing, the trial judge determined that the statements were given voluntarily and

were admissible.  See id. at 228.  Petitioner raised this claim in his pro se supplemental brief on

direct appeal.  The OCCA rejected the claim, finding as follows:

> [T]he record supports a finding that appellant's incriminating statement after his
> arrest was spontaneously volunteered and not the result of police interrogation.  The
> district court properly concluded the statement was not obtained by police coercion.
> "Volunteered statements of any kind are not barred by the Fifth Amendment." *Hyatt
> v. State*, 1989 OK CR 56, ¶ 3, 779 P.2d 993, 994-95, *quoting Miranda v. Arizona*,
> 384 U.S. 436, 478, 86 S. Ct. 1602, 1630, 16 L. Ed. 2d 694 (1966).  The statement
> was properly admitted.

(Dkt. # 18-3 at 4).

The ultimate test of the voluntariness of a confession is whether it is the product of an

essentially free and unconstrained choice by its maker.  See Malloy v. Hogan, 378 U.S. 1, 7 (1964).

A confession is involuntary or coerced if the "totality of the circumstances" demonstrates that the

confessor did not freely decide to give the statement.  Arizona v. Fulminante, 499 U.S. 279, 285-86

(1991). Under the totality of the circumstances approach, both the characteristics of the accused and

the details of the interrogation are considered.  Schneckloth v. Bustamonte, 412 U.S. 218, 226

(1973).  Furthermore, the Fifth Amendment provides that no person shall be compelled in any

criminal case to be a witness against himself.  In Miranda v. Arizona, 384 U.S. 436 (1966),  the

Supreme Court concluded that, "without proper safeguards the process of in-custody interrogation

of persons suspected or accused of crime contains inherently compelling pressures which work to

undermine the individual's will to resist and to compel him to speak where he would not otherwise

do so freely." Id. at 467.  The Court admonished that "any evidence that the accused was threatened,

tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege." Id. at 476.

It is well settled that the Miranda warning is a constitutional requirement adopted to reduce the risk of a coerced confession and to implement Fifth Amendment protections. Dickerson v. United States, 530 U.S. 428, 444 (2000). In Berkemer v. McCarty, 468 U.S. 420 (1984), the Supreme Court explained that,

> The purposes of the safeguards prescribed by Miranda are to ensure that the police do not coerce or trick captive suspects into confessing, to relieve the 'inherently compelling pressures' generated by the custodial setting itself, 'which work to undermine the individual's will to resist,' and as much as possible to free courts from the task of scrutinizing individual cases to try to determine, after the fact, whether particular confessions were voluntary.

Berkemer, 468 U.S. at 433 (internal citations and footnotes omitted). However, the Court also observed that, "cases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of Miranda are rare." Id. at n.20. After being advised of his Miranda rights, an accused may himself validly waive his rights by an express statement that he is willing to make a statement. North Carolina v. Butler, 441 U.S. 369, 374 (1979).

After a review of the record, the Court finds that the OCCA's decision was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. During the Jackson v. Denno hearing, Officer Josh Martin testified that, while he and Officer Jason Muse transported Petitioner to the Detective Division, Petitioner volunteered the statement that "the feds have been fucking me for years, so I said, 'fuck it, I'm going to do some licks,'" or "I'm going to take their money, so I hit some licks on a bank." See Dkt. # 19-3 at 38. Martin further testified that no questions had been asked of Petitioner when he made the statements. Id. While

acknowledging that Petitioner had sustained injuries because he was "pepper-balled" and tackled while being brought into custody, id. at 39-40, Martin also denied hitting or threatening Petitioner and denied that anyone pointed a gun at Petitioner. Id. at 42-43. Martin also acknowledged that, prior to being transported, no one read Miranda warnings to Petitioner. Id. at 53. In contrast, Petitioner testified that as he was being transported, Officer Muse started "beating me in the head with his fist" and kept asking, "Where's the money? Where's the gun?" Id. at 60. Petitioner also testified that Officer Muse pointed his gun at Petitioner's head and threatened to blow his head off unless Petitioner told him "where the money is." Id.

The record presented during the Jackson v. Denno hearing supports the trial court's finding that, under the totality of the circumstances, Petitioner's statements were voluntary and admissible. Petitioner failed to provide evidence showing that his statements were made in response to interrogation or that his statements were made after suffering physical abuse.[6] Petitioner fails to show that the OCCA's decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, 28 U.S.C. § 2254(d). Habeas corpus relief is denied on ground 1.

## 2. Ineffective assistance of appellate counsel (ground 2)

As his second ground of error, Petitioner alleges that appellate counsel provided ineffective assistance of counsel in failing to argue on direct appeal that trial counsel had a conflict of interest. (Dkt. # 1 at 20). Petitioner argues that "trial counsel's collusion with prosecutors to conceal witness

---

[6]Petitioner's mug shot (Dkt. # 19-9 at 31) shows a swollen lip and facial abrasions and is consistent with the injuries suffered by Petitioner as a result of his resistance as described by Martin and Officer Andrew Mackenzie during the Jackson v. Denno hearing. See Dkt. # 19-3, Tr. Vol. I at 48-53.

tampering from the court caused counsel to make a false statement on the record to the court, whereby, she sacrificed her client to protect the state's case and herself from incrimination, demonstrating an actual conflict of interest." Id. at 23. Petitioner raised this claim on post-conviction appeal. The OCCA denied relief, finding as follows:

> In order to establish a claim of ineffective assistance of appellate counsel, a petitioner must show both (1) deficient performance, by demonstrating that his counsel's conduct was objectively unreasonable; and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error, the result of the appeal would have been different. *Logan v. State*, 2013 OK CR 2, ¶ 5, 293 P.3d 969, 973. Petitioner's jury found him guilty beyond a reasonable doubt on all five counts charged in this case. Petitioner has not shown that his appellate counsel's performance was objectively unreasonable in failing to get the jury verdict overturned or in failing to obtain other relief. *Id.* He has not demonstrated a reasonable probability that the result of his appeal would have been different. *Id.*

(Dkt. # 18-5 at 2-3).

Petitioner is not entitled to habeas relief on his claim of ineffective assistance of appellate counsel unless he demonstrates that the OCCA's adjudication was contrary to, or an unreasonable application of, Strickland v. Washington, 466 U.S. 668 (1984). When assessing claims of ineffective assistance of appellate counsel, this Court applies the Strickland two-pronged standard used for general claims of ineffective assistance of trial counsel. Smith v. Robbins, 528 U.S. 259, 285 (2000). Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of

the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). "The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 112. If Petitioner is unable to show either "deficient performance" or "sufficient prejudice," his claim of ineffective assistance fails. Strickland, 466 U.S. at 700. Thus, it is not always necessary to address both Strickland prongs. This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential." Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (noting that a habeas court must take a "highly deferential" look at counsel's performance under Strickland and through the "deferential" lens of § 2254(d)).

When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999). In Cargle v. Mullin, 317 F.3d 1196 (10th Cir. 2003), the Tenth Circuit directed that:

> If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration

must be given to any professional judgment involved in its omission; of course, if the
issue is meritless, its omission will not constitute deficient performance.

Id. at 1202 (citation and footnote omitted); see also Parker v. Champion, 148 F.3d 1219, 1221 (10th

Cir. 1998). In addition,

[T]o satisfy Strickland's deficient performance element, a habeas petitioner 'must .
. . show that his appellate counsel was objectively unreasonable in failing to find
arguable issues to appeal – that is, that counsel unreasonably failed to discover
nonfrivolous issues and to file a merits brief raising them.' To satisfy Strickland's
prejudice element, a petitioner must establish 'a reasonable probability that, but for
his counsel's unreasonable failure to raise an issue, he would have prevailed on his
appeal.'

Kidwell v. Martin, 480 F. App'x 929, 933 (10th Cir. 2012) (unpublished) (quoting Robbins, 528

U.S. at 285). The Tenth Circuit has consistently held that "[w]hile counsel should not omit 'plainly

meritorious' claims, counsel need not raise meritless issues." Smith v. Workman, 550 F.3d 1258,

1268 (10th Cir. 2008) (quoting Miller v. Mullin, 354 F.3d 1288, 1298 (10th Cir. 2004)). To prevail,

a petitioner must "show an 'objectively unreasonable' decision by the appellate counsel as well as

a 'reasonable probability that the omitted claim would have resulted in relief.'" Id. (quoting Neill,

278 F.3d at 1057 & n.5).

"The Sixth Amendment right to effective assistance of counsel encompasses the correlative

right to representation that is free from conflicts of interest." Hale v. Gibson, 227 F.3d 1298, 1312

(10th Cir. 2000) (quoting Selsor v. Kaiser, 81 F.3d 1492, 1496-97 (10th Cir. 1996)). The Tenth

Circuit has explained the "typical conflict of interest case giving rise to a claim of ineffective

assistance of counsel involves multiple representation of co-defendants at a single trial." Id.

(citation omitted). In addition, "a conflict may also arise where a lawyer's self-interest is adverse

to the interest of his client." Id. To establish a conflict of interest, "the interest of counsel and

defendant must be divergent in the current litigation, such that the attorney has an interest in the

outcome of the particular case at issue that is adverse to that of the defendant." Id. at 1313. Further, "a defendant who argues that an actual conflict prevented his attorney from providing effective assistance must 'show that his counsel *actively* represented conflicting interest.'" United States v. Soto Hernandez, 849 F.2d 1325, 1329 (10th Cir. 1988) (quoting Cuyler v. Sullivan, 446 U.S. 335, 350 (1980)).

Petitioner bears the burden of demonstrating that the OCCA unreasonably applied Strickland. After careful review of the record, the Court finds Petitioner has failed to make the necessary showing. Although the record reflects that Petitioner was not pleased with his attorney, Petitioner has failed to point to facts showing that an actual conflict of interest adversely affected his lawyer's performance.

Additionally, to the extent Petitioner argues a complete breakdown in communication rendered counsel's performance ineffective, his claim shall be denied. The Sixth Amendment does not guarantee a "'meaningful relationship' between an accused and his counsel." Morris v. Slappy, 461 U.S. 1, 14 (1983). To prove a complete breakdown in communication, a petitioner "must put forth evidence of a severe and pervasive conflict with his attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible." United States v. Lott, 310 F.3d 1231, 1249 (10th Cir. 2002). Petitioner has failed to make this showing.

Therefore, Petitioner's claim that trial counsel had a conflict of interest lacks merit. Because the omitted claim lacks merit, Petitioner cannot show a reasonable probability that he would have prevailed on appeal and cannot satisfy the prejudice prong of Strickland. As a result, Petitioner fails to show the OCCA's denial of his claim of ineffective assistance of appellate counsel was contrary

to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court. His request for habeas relief on ground 2 is denied.

### 3. Violation of Sixth Amendment right to self-representation (ground 3)

In ground 3, Petitioner claims that the trial court violated his Sixth Amendment right to self-representation when he was denied the right to discharge his attorney and represent himself. (Dkt. # 1 at 36). Petitioner raised this claim in his pro se supplemental brief on direct appeal. The OCCA denied relief, finding as follows:

> [T]he district court did not commit reversible error by refusing Appellant's untimely mid-trial requests to discharge appointed counsel and represent himself. *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); *Swain v. State*, 1980 OK CR 120, ¶ 13, 621 P.2d 1181, 1183 (holding more than personality conflict or disagreement is required to remove counsel once defendant has accepted representation).

(Dkt. # 18-3 at 4).

The Supreme Court has unequivocally held that the Sixth Amendment "grants to the accused personally the right to make his defense." <u>Faretta v. California</u>, 422 U.S. 806, 819 (1975); <u>see</u> <u>also</u> <u>United States v. Mackovich</u>, 209 F.3d 1227, 1236 (10th Cir. 2000) ("A criminal defendant has a constitutional and a statutory right to self-representation."). To invoke the right, a criminal defendant must (1) " 'clearly and unequivocally' assert his intention to represent himself," (2) "make this assertion in a timely fashion," and (3) " 'knowingly and intelligently' relinquish the benefits of representation by counsel." <u>Mackovich</u>, 209 F.3d at 1236 (citations omitted). Further, the right to self-representation is not absolute. <u>United States v. Akers</u>, 215 F.3d 1089, 1097 (10th Cir. 2000). In certain instances, "a court may terminate the right to self-representation, or the defendant may waive it, even after he has unequivocally asserted it." <u>Munkus v. Furlong</u>, 170 F.3d 980, 984 (10th Cir. 1999) (citation omitted).

In Faretta, the defendant requested that he be allowed to represent himself "weeks before trial." Faretta, 422 U.S. at 835. In this case, nothing in the record suggests that Petitioner made a timely request to proceed pro se. Instead, the record reflects that on the first day of trial, Petitioner submitted a six page, handwritten document to the trial judge requesting that his attorney be dismissed for "noncommunication and ineffective assistance." See Dkt. # 19-3, Tr. Vol. I at 3. In that motion, Petitioner requested new counsel outside the public defender's office and did not request that he be allowed to proceed pro se. See Dkt. # 18-6 at 6. The trial judge denied the motion, noting that "we were here last week to hear motions in this matter. And at that point the Court was not advised that there was any kind of a problem, or that the defendant was not happy with counsel."[7] See Dkt. # 19-3, Tr. Vol. I at 7. Later during the trial, Petitioner again told the trial judge "I'm having communication problems with my attorney . . . Please let me go pro se." See Dkt. # 19-4, Tr. Vol. II at 238. The trial judge denied Petitioner's request to proceed pro se. Id.

The Court finds that the OCCA's factual finding that Petitioner's requests to discharge appointed counsel and represent himself were untimely made midtrial is supported by the state court record. Petitioner did not request that he be allowed to represent himself until after trial had commenced. Petitioner has failed to demonstrate that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1), (2). The request for habeas corpus relief on ground 3 is denied.

---

[7]In fact, at a pretrial hearing held November 24, 2009, only six days before trial began, Petitioner advised the trial judge that he was satisfied with defense counsel's representation. See Dkt. # 19-2, Tr. Pretrial Hr'g at 12.

## 4.     Confrontation Clause violation (ground 4)

In ground 4, Petitioner claims that his right to confront a witness against him was violated when his jail phone records were entered into evidence through the testimony of Corporal Chris Stout who was not the custodian of the jail records. (Dkt. # 1 at 46). Petitioner raised this claim in his pro se supplemental brief filed on direct appeal. The OCCA denied relief, finding as follows:

> [T]he Court finds that Appellant's own recorded statements from jail, admitted against him at trial, are not prohibited by the Confrontation Clause of the Sixth Amendment. Appellant's own statements are not testimony against him from a witness whom he has the right to confront at trial. Moreover, "the [Confrontation] Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Crawford v. Washington*, 541 U.S. at 59, n.9, 124 S. Ct. at 1369, n.9. Appellant testified at trial and had the opportunity to explain his statements. This proposition is denied.

(Dkt. # 18-3 at 5).

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had . . . a prior opportunity for cross-examination." Id. at 53-54. In reaching its ruling, the Supreme Court distinguished between "testimonial" and "non-testimonial" hearsay statements, indicating that only "testimonial" hearsay statements make the declarant a "witness" within the meaning of the Confrontation Clause. Id. at 51.

First, Petitioner is incorrect that the jail phone call recordings were entered into evidence through Corporal Stout.[8]  Instead, the record reflects that the recorded phone calls were entered into evidence through Douglas Campbell, an investigator for the Tulsa County District Attorney's Office. See Dkt. # 19-5, Tr. Vol. III at 531, 534.  Campbell testified that he was the person who pulled Petitioner's recorded phone calls "off the system."  Id. at 525.  He also explained that, before he could access recorded phone calls, he obtained a user name and password and received training in how to operate the jail's recording system from the person who maintains the Global Tel Link system at the jail.  Id. at 524.  In addition, Craig Chapman testified that he was employed as the service manager for Global Tel Link.  See Dkt. # 19-4, Tr. Vol. II at 484.  He explained how the telephone calls placed by inmates at the TCJ are recorded and that the recordings cannot be altered. Id. at 486-87.

Furthermore, admission of Petitioner's jail phone call recordings did not violate Petitioner's rights under the Confrontation Clause.  Where the "witness" against a defendant is the defendant himself, there is no violation of the defendant's Sixth Amendment right to confront because the defendant only has the right to confront the witnesses against him.  See United States v. Lafferty, 387 F. Supp. 2d 500, 511 (W.D. Pa. 2005) (citing U.S. Const. amend VI and finding that inherent in Crawford is idea that right of confrontation applies to accusations of third parties implicating a criminal defendant, not a criminal defendant implicating himself).  The OCCA's ruling is not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, and did not involve an unreasonable determination of the facts

---

[8]Corporal Stout testified that he recognized the voice in the jail phone call recordings as being the voice of Patrick Manning.  (Dkt. # 19-5, Tr. Vol. III at 503).

in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1), (2). Habeas corpus relief is denied on ground 4.

### 5. Improper admission of eyewitness identification (ground 5)

As his fifth ground of error, Petitioner alleges that the admission of witnesses' in-court identifications of him as the perpetrator violated his right to due process because the identifications were tainted by an unduly suggestive pre-trial photo array and by "showup lineups" during trial and in the courthouse hallway. (Dkt. # 1 at 59, 60). Petitioner raised these claims on direct appeal, first as an incident underlying a claim of ineffective assistance of counsel. See Dkt. # 18-1 at 11-17. In his pro se supplemental brief, Petitioner also challenged the in-court identifications as a claim of prosecutorial misconduct and as a violation of due process. See id. at 24-25, 27-29. The OCCA denied relief on the claims, finding as follows:

> Appellant argues counsel was ineffective in failing to object to identification testimony based on unduly suggestive pre-trial identifications and improper in-court identifications. According to the two-pronged analysis required by *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984), Appellant is not entitled to relief. Appellant cannot show prejudice from counsel's failure to object to identification testimony, because there is no reasonable probability that the identifications would have been suppressed, *see Reaves v. State*, 1982 OK CR 119, ¶¶ 7-9, 649 P.2d 780, 782-82; or that Appellant would have been acquitted in the absence of the challenged identification testimony. *Slavens v. State*, 1977 OK CR 37, ¶ 20, 559 P.2d 1258, 1262 (finding independent evidence of guilt rendered allegedly erroneous identification testimony harmless). The failure to show the prejudice required by *Strickland* is fatal to Appellant's claim. *Alverson v. State*, 1999 OK CR 21, ¶ 26, 983 P.2d 498, 510.
>
> . . . .
>
> . . . Appellant has not shown that the prosecutor committed misconduct in the presentation of unreliable identification testimony. The record shows that neither the pre-trial identification procedures nor the in-court identification testimony was unreliable. This testimony was properly admitted along with cautionary instructions to the jury. There is no error. *Reaves*, 1982 OK CR 119, ¶¶ 7-9, 649 P.2d at 782-82.

(Dkt. # 18-3 at 2-3, 4-5). Without specifically addressing Petitioner's due process claim, the OCCA nonetheless specifically found that neither the pre-trial identification procedures nor the in-court identification testimony was unreliable. Id. at 4-5.

To implicate the Due Process Clause, a petitioner must demonstrate that eyewitness identification was "procured under unnecessarily suggestive circumstances arranged by law enforcement." See Perry v. New Hampshire, 132 S. Ct. 716, 730 (2012); Manson v. Brathwaite, 432 U.S. 98, 112-16 (1977); Neil v. Biggers, 409 U .S. 188, 198 (1972). A "due process check" is applied to the admission of eyewitness identification "when the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime." Perry, 132 S. Ct. at 720.

In Perry, the Supreme Court synthesized its previous decisions in Biggers and Brathwaite and emphasized "first, that due process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary." Perry, at 724. "Even when the police use such a procedure, . . . suppression of the resulting identification is not the inevitable consequence." Id. "A rule requiring automatic exclusion . . . would 'go too far,' for it would 'kee[p] evidence from the jury that is reliable and relevant,' and 'may result, on occasion, in the guilty going free.'" Id. (quoting Brathwaite, 432 U.S. at 112). "Instead of mandating a per se exclusionary rule, . . . the Due Process Clause requires courts to assess, on a case-by-case basis, whether improper police conduct created a "'substantial likelihood of misidentification.'" Id. (quoting Biggers, 409 U.S. at 201). "'Reliability of the eyewitness identification is the linchpin' of that evaluation." Id. at 724-25 (quoting Brathwaite). "Where the 'indicators of [a witness'] ability to make an accurate identification are outweighed by the corrupting effect of law enforcement suggestion, the

identification should be suppressed. Otherwise, the evidence (if admissible in all other respects) should be submitted to the jury." Id. at 725 (alterations and citations omitted). The Supreme Court held that "when no improper law enforcement activity is involved, . . . it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt." Id. at 721; see also Snow v. Sirmons, 474 F.3d 693, 720 (10th Cir. 2007) ("When a pretrial identification occurs under impermissibly suggestive circumstances and the in-court identification of the witness is unreliable, the identification should be excluded."); Howard v. Warden, Lebanon Corr. Inst., 519 F. App'x 360, 366 (6th Cir. 2013) ("When determining whether to suppress an eyewitness identification, a court should not consider the reliability of eyewitness evidence . . . unless the defendant . . . prov[es] that the police employed an unduly suggestive identification procedure.").

The Court finds that Petitioner has failed to demonstrate that the OCCA's adjudication of this claim entitles him to relief under 28 U.S.C. § 2254(d). First, Petitioner fails to demonstrate that the police used an unduly suggestive identification procedure. Detective Brown testified that, after receiving the Crime Stoppers tip that Petitioner may have been the person who committed the robbery on February 25, 2009, he prepared a photo array of six individuals with similar features. See Dkt. # 19-4, Tr. Vol. II at 366. One of the individuals pictured was Petitioner. On March 9, 2009, Detective Brown showed the photo lineup separately to the IBC Bank employees who were present during the robbery on February 25, 2009, and to one employee who was also present during the robbery on February 3, 2009. Before showing the photo lineup, Detective Brown showed the

employees a still surveillance photograph taken during the robbery.  Id. at 368, 370, 371.  Three of the employees, Sergio Torres, Flor Rivas, and Norma Deleon, selected the photograph of Petitioner as the robber.  Id. at 369, 370, 371; see also Dkt. # 19-9 at 9, 15, 16.  During trial, both Torres and Deleon identified Petitioner as the robber.  See Dkt. # 19-4, Tr. Vol. II at 291-92, 343.  Rivas confirmed that she selected Petitioner's photo in the photo lineup, id. at 322, but testified that she did not see the robber in the courtroom, id. at 320.

Petitioner also complains that he was subjected to an improper "showup" lineup when, prior to testifying, one of the robbery victims, Crystal Chambers, came into the courtroom during a recess and saw Petitioner.  See Dkt. # 19-3, Tr. Vol. I at 229.  Defense counsel objected and the prosecutor explained that Ms. Chambers had been asked to wait outside.  Id.  The prosecution also explained that, other than Ms. Chambers, the only people identified by Petitioner as having seen him inside the courtroom were not going to be called by the State as witnesses.  See Dkt. # 19-4, Tr. Vol. II at 238. When called to testify, Ms. Chambers identified Petitioner as the robber.  Id. at 268-69.  On cross-examination, Ms. Chambers acknowledged that she saw the defendant on the previous day when she came in to the courtroom to talk to the prosecutor.  See id. at 276-77.  She then confirmed she was sure that Mr. Manning was the man who robbed the bank on January 11, 2009.  Id. at 277.  In addition, during trial, Petitioner complained that witnesses saw him in the courthouse hallway in handcuffs.  Id. at 238.  In ruling that there was no resulting prejudice, the trial judge noted that Petitioner was "dressed in a suit today, a shirt, a tie.  He walked in with the two deputies in a hallway off of the area where there are witnesses waiting to testify."  Id. at 240.  The trial judge reasoned that the witnesses "are aware that the defendant is or has been incarcerated," and found "no

prejudice there." Id. This Court finds neither of the "showup" incidents complained of by Petitioner resulted in an unduly suggestive identification procedure.

In addition, the evidence of Petitioner's identification as the robber was properly submitted to the jury. Defense counsel vigorously cross-examined each identification witness. See Dkt. # 19-3, Tr. Vol. I at 210-13; Dkt. # 19-4, Tr. Vol. II at 253-65, 276-79, 296-303, 323-33, 349-56. The jury received an instruction on weighing testimony as to identity and stating that "[t]he State must prove the identity of the defendant as the person who committed the crime charged beyond a reasonable doubt." See Dkt. # 18-6 at 7. Petitioner has not shown, and the record does not reflect, that the in-court identification evidence actually admitted and considered by the jury in Petitioner's criminal case was coerced, false, or the result of unnecessarily suggestive police procedure. The admission of the robbery victims' in-court identification of Petitioner did not render Petitioner's trial fundamentally unfair, and the OCCA's adjudication of this claim was neither contrary to nor an unreasonable application of clearly established federal law, as determined by the Supreme Court. Habeas corpus relief is denied on ground 5.

### 6. Improper denial of post-conviction request for evidentiary hearing (ground 6)

As his final ground of error, Petitioner alleges that the state district court erred in failing to hold an evidentiary hearing on his post-conviction claims of ineffective assistance of trial and appellate counsel. (Dkt. # 1 at 71). As noted by Respondent, Petitioner did not request an evidentiary hearing on the ineffective assistance of counsel claim raised on direct appeal. On post-conviction appeal, the OCCA ruled that:

> Petitioner asks for an evidentiary hearing, but he has not established the existence of a material issue of fact. 22 O.S.2011, §§ 1083, 1084. He has not established that any alleged new evidence was undiscoverable despite the exercise of due diligence. *Romano v. State*, 1996 OK CR 20, ¶ 12, 917 P.2d 12, 15. He has

not established that any alleged new evidence would have changed the jury's verdict. *Smith v. State*, 1992 OK CR 3, ¶ 15, 826 P.2d 615, 617-18.

(Dkt. # 18-5 at 3). Respondent argues that the OCCA's ruling affirming the denial of a request for a post-conviction evidentiary hearing was based on Petitioner's failure to meet the requirements of Oklahoma's statutes governing post-conviction procedures. See Dkt. # 18 at 26.

The Tenth Circuit Court of Appeals has consistently ruled that challenges to state post-conviction procedures do not rise to the level of federal constitutional claims cognizable on habeas corpus review. See Phillips v. Ferguson, 182 F.3d 769, 773-74 (10th Cir. 1999); Sellers v. Ward, 135 F.3d 1333, 1339 (10th Cir. 1998) (when petitioner asserts no constitutional trial error, but only error in the state post-conviction procedure, no relief can be granted in federal habeas corpus); Steele v. Young, 11 F.3d 1518, 1524 (10th Cir. 1993). As a result, to the extent Petitioner challenges Oklahoma's post-conviction procedures, his claim raised in ground 6 is not cognizable in this federal habeas corpus action. Also, as determined in Part A above, Petitioner is not entitled to an evidentiary hearing on his claims raised in the petition for writ of habeas corpus. Petitioner's request for habeas corpus relief on ground 6 is denied.

**E.    Certificate of appealability**

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a

court could resolve the issues differently, or that the questions deserve further proceedings.  <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (citing <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983)).

After considering the record in this case, the Court concludes that a certificate of appealability should not issue.  Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA was debatable amongst jurists of reason.  <u>Dockins v. Hines</u>, 374 F.3d 935 (10th Cir. 2004).  The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently.  A certificate of appealability shall be denied.

## *CONCLUSION*

After careful review of the record, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.  Therefore, the petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.  The Court Clerk shall note on the record the substitution of Robert Patton, Director, in place of Edward Evans, Interim Director, as party respondent.

2.  The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

3.  Petitioner's motion "to expand on appeal" (Dkt. # 29) is **denied**.

4.  Petitioner's motion "to expedite habeas petition" (Dkt. # 30) is **declared moot**.

5.  Petitioner's motion "for appointment of counsel/evidentiary hearing" (Dkt. # 32) is **denied**.

6.  A certificate of appealability is **denied**.

7.  A separate judgment shall be entered in this matter.

8.      The Clerk shall send a copy of this Opinion and Order to the Tenth Circuit Court of Appeals

as it relates to Tenth Circuit Case No. 15-5065.


**DATED** this 29th day of July, 2015.


**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**